UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:14-cv-95-DCR

MICHAEL DEAN FUGATE,                                          PETITIONER,

V.                          **MAGISTRATE JUDGE'S REPORT**
                            **AND RECOMMENDATION**

CLARK TAYLOR,
*Warden, Kentucky State Reformatory,*                        RESPONDENT.

\*\*\* \*\*\* \*\*\* \*\*\*

A. INTRODUCTION

On February 16, 1988, Michael Dean Fugate (hereinafter "Fugate"), was found guilty of murder and abuse of a corpse in the Powell Circuit Court. [R. 16-22].  In this action brought under 28 U.S.C. § 2254, Fugate challenges his conviction and raises nine (9) arguments in his petition for relief. [R. 1].  All but one of these claims were previously presented to the state's highest courts for consideration and allowed no relief.  Because these claims are either procedurally defaulted or without merit, the undersigned recommends denial of this petition for writ of habeas corpus. [R. 1].

B. FACTUAL AND PROCEDURAL BACKGROUND

The facts summarized by the Kentucky Court of Appeals in the unpublished opinion of Michael Dean Fugate v. Commonwealth of Kentucky, 2012-CA-713-MR, 2013 WL 26600067 (Ky. App. June 14, 2013), *review denied*, 2013-SC-465 (Ky. Feb. 12, 2014), are undisputed and therefore entitled to a presumption of correctness.[1]  They state that:

---
[1] Benge v. Johnson, 474 F.3d 236, 241 (6th Cir. 2007).

According to the evidence presented at the initial trial of this matter, Fugate and two friends decided to skip some of their afternoon classes at high school and go shooting near Fugate's home instead.  As stated by our Kentucky Supreme Court in the direct appeal of this matter (footnote omitted):

> [Fugate] was armed with an assault rifle, White was armed with a a shotgun, and Collins was unarmed.  White's version of the events was that he separated from [Fugate] and Collins to go around the hill and shoot a turtle.  Suddenly, he heard gunfire.  He testified that when he returned, he found Collins' body on the ground between some rocks, and [Fugate] standing over the body with his assault rifle in hand. [Fugate] instructed White to shoot Collins again.  White obeyed.

Fugate v. Commonwealth, Case No. 91-SC-881, May 22, 1997, p. 2

Fugate later returned with an axe to sever and dispose of Collins' head in a nearby dump on a mountain in an adjoining county in an effort to conceal Collins' identity.  However, enough of Collins' lower jaw remained that the body could be identified by dental records, as well as with a wallet containing Collins' school lunch ticket.  Additionally, the other individuals involved in the murder and abuse of Collins' corpse provided evidence and testimony regarding Fugate's role in the crimes, including the individual who had driven Fugate to dispose of Collins' head, who was wearing a wire and taped a conversation with Fugate regarding the crimes.

....

On December 18, 1984, Fugate was indicted by a Perry County Grand Jury on one count of murder and one count of abuse of a corpse.  Fugate entered a plea of not guilty on January 9, 1984.  Fugate made a motion for a change of venue, and that motion was granted.  The case was then transferred to Powell County.

... Ultimately, Fugate was represented by Honorable J. Douglas Graham, who had many years of experience in criminal law, including having previously served as a prosecutor and for many years as a circuit court judge.

During the course of the trial below, from February 8 to 10, 1988, evidence was admitted consisting of testimony of White, who claimed to have been with Fugate at the time of the shooting and who played a part in the shooting.  Additionally, evidence was admitted through Fugate's friend Joann Moore, with whom he had discussed the murder of Collins and who picked Fugate up approximately a month following the murder to assist him in disposing of Collins' head.  One of those conversations was taped and played for the jury at trial.  In that tape, Fugate is heard to state his belief that the police would not have

any evidence to go on as long as Moore and White kept their mouths shut.  Fugate went on to state that if White said anything to the police, Fugate would "kill him deader than hell," and "show him."  This tape was admitted as evidence for the jury's consideration.

As noted, at the conclusion of the trial below, Fugate was found guilty of the charges as set forth in the indictment.  The judgment sentencing imprisonment for murder and a twelve-month sentence for abuse of a corpse was entered on February 16, 1988, with the sentences to be served concurrently.

Fugate made no attempt to appeal his conviction until 1998.  At that time, he filed a motion to file a belated appeal. (footnote omitted).  A hearing was held on the issue of waiver of right to appeal, and as there was no evidence that Fugate had expressly waived that right, his motion for belated appeal was granted on August 24, 1995.  The Kentucky Supreme Court affirmed the Powell Circuit Court convictions in an unpublished opinion rendered on May 22, 1997.  Thereafter, on June 25, 1998, Fugate filed a motion to vacate, set aside, or correct judgment and sentence pursuant to RCr. 11.42, as well as a motion for an evidentiary hearing.

In that motion, Fugate asserted that counsel was ineffective for failing to call seven witnesses who had seen Collins after he was alleged to have been shot, and for failing to call David Crum, who would have testified that, contrary to the Commonwealth's allegations and White's testimony, he had not driven White, Collins, and Fugate to Fugate's home on September 3, 1982.  In an order dated October 12, 1998, the Powell Circuit Court denied Fugate's motions, specifically finding that counsel "was reasonably likely to render and did render effective assistance of counsel to defendant."

Fugate pursued an appeal from that order.  On September 1, 2000, this Court rendered an unpublished, unanimous opinion affirming the circuit court's order.  In that opinion, the Court of Appeals relied in part on the opinion of Robbins v. Commonwealth, 719 S.W.2d 742 (Ky. App. 1986)(overruled by Norton v. Commonwealth, 63 S.W.3d 175 (Ky. 2001)), which was good case law at the time that this matter was decided.  However, during the pendency of Fugate's appeal, our Kentucky Supreme Court rendered opinions which slightly shifted the standard of review to be used in cases involving an RCr. 11.42 motion, requiring instead that a defendant claiming error by his counsel for failing to call witnesses at trial must prove that "absent the errors by trial counsel, there is a 'reasonable probability' that the jury would have reached a different result."  Norton v. Commonwealth, 63 S.W.3d 175, 177 (Ky. 2001).

Subsequently, on February 13, 2002, the Kentucky Supreme Court entered an opinion and order granting discretionary review of this matter, and summarily remanding it to the Powell Circuit Court for additional proceedings in light of the Court's ruling in Fraser and Norton, supra.  The post-conviction motion was

3

addressed by the circuit court on remand as instructed by the Supreme Court. After reviewing the facts and evidence, the circuit court entered an order on March 27, 2012, utilizing the standards most recently set forth by our courts. In that order, the circuit court discussed the most recent case law and standards of review as well as the evidence against Fugate. After doing so, the court concluded that the previous findings of the Powell Circuit Court were adequate and proper and therefore affirmed its decision to overrule Fugate's RCr. 11.42 motion. In doing so, the court below stated:

> Evidence at trial indicated Fugate killed the victim, Collins, with a high-powered rifle and thereafter cut the victim's head off and dumped the victim's head at another site. The transcript indicates that a tape-recorded confession was played at trial wherein Fugate discusses the shooting, the removal of the head of the victim and a conspiracy for all to remain silent. This taped conversation was with a friend, namely Joann Moore. The record indicates that apparently the audiotape was challenged by Motion to Suppress and the Court overruled the Motion to exclude the audiotape and the audiotape was played at trial. Nothing in the record indicates ineffective assistance of counsel. Evidence of guilt of the Movant was compelling.

Fugate v. Commonwealth, Powell Circuit No. 86-R-7, Judgment (March 27, 2012).

[R. 16-4 at 2-7].

Following the conclusion of his state court post-conviction proceedings and on March 12, 2014, Fugate filed the instant action under 28 U.S.C. § 2254, asserting nine separate grounds for relief. [R. 1]. Fugate claims generally that his Due Process rights were violated and also that the state court unreasonably applied clearly established federal law when the court: I.) admitted and played the tape recorded conversation with Joann Moore; II.) permitted the use of a transcript of the tape recorded conversation with Joann Moore during jury deliberations; III.) allowed the prosecution to use threats and intimidation to secure the testimony of Joe Wilder; IV.) permitted the prosecutor to recommend a life sentence during his opening and closing arguments; V.) permitted the use of exculpatory evidence during trial; VI.) allowed the prosecution to make improper comments and statements intended to inflame the passions of the jury; VII.) allowed

prosecutorial misconduct; VIII.) denied Fugate effective assistance of counsel; and IX.) denied

Fugate a complete record of the proceedings, an evidentiary hearing, and made additional errors

during his trial. [R. 1 at 5-8]. The Commonwealth has responded by arguing that the petition

should be denied because Fugate's claims are either procedurally barred or without merit. [R.

16]. The Court will first address the Petitioner's claim that is procedurally barred.

## C. PROCEDURAL DEFAULT OF GROUND I

Before reviewing the merits of a habeas petition, the court should consider any applicable

"procedural-bar issue" which would prevent consideration of Fugate's claims on the merits.

Lambrix v. Singletary, 520 U.S. 518, 524 (1997). In his habeas petition, Fugate claims that his

due process rights were violated when the trial court admitted a tape recorded conversation with

Joann Moore. [R. 1 at 5]. Fugate neither provides information as to the cause for or actual

prejudice from the default nor does he claim that he is actually innocent. Id. Respondent

correctly argues that ground I of Fugate's pending petition is procedurally defaulted because the

Kentucky Supreme Court barred review of the same claim, ground I of his direct appeal, due to

his failure to comply with state court procedures. [R. 16-15 at 4]. A petitioner, indeed,

procedurally defaults a claim if he fails to comply with state procedural rules in presenting his

claims to state courts. Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006) (citing Maupin

v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)).

The Sixth Circuit has articulated a four inquiry analysis to determine if a habeas claim

has been procedurally defaulted in this way: (1) whether there is a state procedural rule that is

applicable to the petitioner's claim; (2) whether the petitioner failed to comply with that rule; (3)

whether the procedural rule was actually enforced in the petitioner's case; and (4) whether the

state procedural forfeiture is an adequate and independent state ground on which the state can

5

rely to foreclose review of a federal constitutional claim. Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005) (citing Maupin, 785 F.2d at 138). Under the first three prongs, if "the last state court rendering a reasoned opinion in the case clearly and expressly states that its judgment rests on a state procedural bar" the federal court will find the claim to be procedurally barred. See Thompson v. Bell, 580 F.3d 423, 437 (6th Cir. 2009) (quoting Harris v. Reed, 489 U.S. 255, 263 (1989)). Under the fourth prong, a state procedural rule is "adequate" if it is "firmly established and regularly followed." Wilson v. Mitchell, 479 F.3d 491, 499 (6th Cir. 2007) (citations and quotations omitted). A procedural rule is independent when it does not rely on federal law. Id.

For claims found to be procedurally defaulted, federal courts only consider the merits of these claims if the petitioner demonstrates "'cause and actual prejudice [for the default] or that he is actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998). To establish cause, the petitioner must show that an "'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." Franklin v. Anderson, 434 F.3d 412, 417 (6th Cir. 2006) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "Demonstrating prejudice requires showing that the trial was infected with constitutional error." Franklin  v. Anderson, 434 F.3d 412, 417 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 941 (2007). To prove actual innocence, the petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995).

Under Kentucky law, a defendant may file one post-conviction motion for relief from judgment within three years after entry of final judgment. RCr. 11.42(10). Such motions are "limited to issues that were not and could not be raised on direct appeal." Sanborn v. Commonwealth, 975 S.W.2d 905, 909 (Ky. 1998) (*overruled on other grounds by* Leonard v.

Commonwealth, 279 S.W. 3d 151 (Ky. 2009).  All possible grounds must be presented in the

RCr. 11.42 motion, as the defendant will thereafter be barred from pursuing any further

post-conviction relief. RCr. 11.42(3); McQueen v. Commonwealth, 948 S.W.2d 415, 416 (Ky.

1997); Gross v. Commonwealth, 648 S.W.2d 853, 857 (Ky. 1983); accord George v. Seabold,

909 F.2d 157, 159 (6th Cir. 1990); Stamps v. Rees, 834 F.2d 1269, 1274 (6th Cir. 1987).

Ground I of Fugate's pending habeas petition is subject to procedural default.  This claim

was not appropriately raised below and was disposed of by the Kentucky Supreme Court because

Fugate failed to comply with state procedural rules.  The state appellate court specifically noted

its reasoning on procedural default during its review of this claim.  The court addressed Fugate's

claim that he was denied due process because the recorded conversation between himself and

Joann Moore was played at trial, and found that:

> [Fugate] now argues before this Court that the trial court's admission of
> the tape recorded conversation substantially prejudiced him and should serve to
> reverse his conviction. [Fugate] contends this recording is rife with statements of
> drug abuse, threats and sexual acts all unconnected with the present case.  The
> Commonwealth, on the other hand, challenges [Fugate's] statement of
> preservation asserting that while it is undisputed that trial counsel objected to the
> introduction of the taped statement, the basis of his objection is anything but
> clear.
>
> The limited record reflects that [Fugate's] counsel objected to neither the
> tape's quality nor its content, but merely objected to the way in which the tape
> was obtained.  At the hearings in 1994, no one testified that trial counsel objected
> to the introduction of the tape on different grounds than those discussed in the
> written suppression motion.  As we have previously stated, "appellant [] will not
> be permitted to feed one can of worms to the trial court judge and another to the
> appellate court." Kennedy v. Commonwealth, Ky., 544 S.W.2d 219, 222 (1976).
> Since the record does not reflect that the precise issue argued on appeal was
> raised to the trial judge, the objection to the uncharged conduct has not been
> preserved and must be denied.

[R. 16-15 at 4-5].

Thus, all four parts of the Sixth Circuit's test to determine procedural default are readily satisfied. The Kentucky Supreme Court has ruled that RCr. 11.42 cannot be used to raise, for the first time, a claim that was not previously raised on appeal. See Leonard v. Commonwealth, 279 S.W.3d 151, 156 (Ky. 2009). This rule is an applicable state procedural rule that was actually enforced by the last state court rendering an opinion on Fugate's case to bar his claim. This rule did not rely on any federal law to foreclose appellate review, and has been regularly followed by Kentucky Courts. Sandborn, 975 S.W.2d at 909; McQueen, 948 S.W.2d at 415. As a result, the state procedural default "carries over to federal court and precludes habeas review" of Fugate's federal constitutional claim set forth in ground I of his pending habeas petition. Simpson v. Jones, 238 F.3d 399, 406 (6th. Cir. 2000); See Howard, 405 F.3d at 477; Maupin, 785 F.2d at 138.

Therefore, Fugate has not shown cause to excuse his failure to properly present this claim in his direct appeal in state court and/or actual prejudice, this court may not consider the merits of this ground. See Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994)(internal citations omitted). Because Fugate has not presented information that would satisfy this standard, the court is precluded from considering ground I of his habeas petition.

## D. STANDARD OF REVIEW

Petitioner filed his habeas petition on March 12, 2014. [R. 1]. Thus, all of his remaining claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), Pub. L. No. 104-132, Tit. I, § 101 (1996) (effective April 1996). See Lindh v. Murphy, 521 U.S. 320, 336 (1997). In relevant part, the AEDPA (amended 28 U.S.C. § 2254(d)) directs that an application for a writ of habeas corpus shall not be granted with respect to any claim "unless the adjudication of the claim: (1) resulted in a decision that was contrary to,

8

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

To clarify the standard, the United States Supreme Court has held that, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, *that application* must also be *unreasonable*." Williams v. Taylor, 529 U.S. 362, 411 (2000) (emphasis added).  The AEDPA imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 333, n.7, which effectively "demands that state-court decisions be given the benefit of the doubt." Woodford v. Viscotti, 537 U.S. 19, 24 (2002).  It is not the role of the reviewing court "to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Rather, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id.  All factual findings made by a state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Post v. Bradshaw, 621 F.3d 406, 413 (6th Cir. 2010).

### 1)  Ground II- Jury's Use of a Transcript.

In his petition for relief, Fugate claims, under ground II of his petition, that he was "denied a fair trial and was substantially prejudiced by the jury having a transcript of a tape recorded conversation which was excluded as evidence." [R. 1].  Fugate further argues that even though the jury was able to hear the tape recording during trial, they should not have been afforded a copy of a transcribed copy of that tape recording during their deliberations. Id.  It is

also Fugate's contention that the trial court "specifically ruled that this transcript was not to be given to the jurors" and that "testimony from the 1994 hearings reveal that a copy of the transcript was given [sic] tot he jury along with the tape during their deliberations." Id. at 5. Fugate raised this exact claim in his direct appeal to the Kentucky Supreme Court. [R. 16-15]. Upon review, the Petitioner has failed to show how the Kentucky Supreme Court's decision regarding the use of a transcript of the tape recorded conversation with Joann Moore was an unreasonable application of state law.

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decision, but unreasonably applies that principle to the facts. Williams v. Taylor, 529 U.S. 362, 407-408 (2000). When assessing unreasonableness, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly, but rather that application must also be unreasonable. Id. It is important to note, that a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. Ayers v. Hudson, 623 F.3d 301, 308 (6th Cir. 2010).

Under AEDPA's strictures, we review the last state-court decision to reach the merits of the particular claim being considered. Phillips v. Bradshaw, 607 F.3d 199, 209 (6th Cir. 2010). As to the claim that Fugate raised on direct appeal regarding the use of a transcript during jury deliberations, the Kentucky Supreme Court was the last state court to reach the merits. The Supreme Court of Kentucky thoroughly addressed this issue on direct appeal and found that the record did not support Fugate's claim. [R. 16-15 at 7]. The court further addressed this issue on

10

its merits and held that even if evidence could have been produced regarding the existence and use of a transcript, any error regarding the jury's use of the transcript during deliberations would have been harmless error. Id.  The Kentucky Supreme Court found that:

> [Fugate] further asserts that he was denied a fair trial and was substantially prejudiced by the jury having access to a transcript of a tape recorded conversation which had been excluded as evidence.  We disagree.
>
> According to the testimony given at the 1994 hearings, during [Fugate's] original trial the judge allowed the audiotape of the conversation between Moore and [Fugate] to be played for the jurors, but sustained a defense objection challenging the introduction of a transcript of the audiotaped conversation.  At the 1994 hearings Ms. Kissick, the court reporter in the original trial, recalled that a juror had mentioned to the court that the transcribed conversation was, in fact, in the jury room during deliberations and that the trial judge held a hearing on this matter.  Ms. Kissick further recalled that the trial judge asked her to retrieve the sealed envelopes of trial evidence because they were in her custody.  Once opened, the trial court discovered there was no transcript in the sealed envelopes. The court reporter surmised that if the jurors did have the transcript it was an inadvertent mistake by the bailiff rather than a deliberate attempt to put excluded evidence before the jury.  While nothing in the record indicates whether the trial judge made a ruling on the matter, the trial judge obviously determined that the evidence did not support the juror's statements about the transcript, as [Fugate] was not granted a new trial.
>
> Moreover, at the 1994 hearings [Fugate's] counsel mentioned the name of the juror who made the allegations, but stated that the juror did not recall the details of the meeting with the judge or anything resulting from it.  Consequently, no juror was questioned on the record about the transcript.  Therefore, the most defense counsel could say during the 1994 hearings was that a transcript was alleged to be inside the jury room.  While it is true that jurors must base their decision upon evidence admitted into the record, there has been no showing that jurors in this case ever looked at or even had improper access to the transcript in deciding [Fugate's] fate.
>
> In addition, [Fugate] asserts that Smith v. Commonwealth, Ky., 645 S.W.2d 707 (1983), supports his position that it was reversible error for the transcript to be in the jury room.  We disagree.  In Smith, we held that it was prejudicial error for the trial court to have permitted the jury to take into the jury room, and to perform experiments on, an item not admitted in evidence. Id. at 710.
>
>     ....

> This is clearly distinguishable from the case at bar in which there has never been any allegation that the jurors actually used the transcript during their deliberations. The only question in the present case is whether the inadmissible transcript was improperly in the jury room. The evidence in the record is speculative, at best, that it did.
>
> Furthermore, juror access to items not in evidence does not mandate automatic reversal. In <u>Cole v. Commonwealth, Ky.</u>, 553 S.W.2d 468, 471 (1997), this Court deemed it harmless error for jurors to have a dictionary inside the jury room. The same result should be reached in this case, especially since there is no proof that the jury ever referenced the transcript. Evidence contained in the transcript was at most cumulative of what jurors heard on the audiotape and therefore, harmless. Hence, no reversible error occurred.

[R. 16-15 at 7-9].

To the extent the Petitioner's argument is based upon state law, the Petitioner has failed to state a claim upon which habeas corpus relief may be granted. <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Danner v. Motley</u>, 448 F.3d 372, 375-76 (6th Cir. 2006). Federal habeas corpus review of evidentiary rulings is "extremely limited." <u>Giles v. Schotten</u>, 449 F.3d 698, 704 (6th Cir. 2006). An issue concerning the admissibility of evidence or error in state law does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner was denied a fundamentally fair trial. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). In the present case, the Kentucky Supreme Court found that the Petitioner's proof that there may have been a transcript present at the time the jury was deliberating was speculative. [R. 16-15 at 7-9]. Furthermore, the Kentucky Supreme Court found that even if the transcript was given to the jury, the error was harmless because the audio taped conversation was properly admitted into evidence and played during the trial. <u>Id.</u> Because the Petitioner has failed to show how this application of state law was unreasonable, no relief may be sought under this claim.

**2) Grounds III, IV, V, VI, and VII- Summarily Dismissed**

In his habeas petition, Fugate claims that he was denied due process of the law and under grounds III, IV, V, VI and VII, he claims that the state court's findings regarding prosecutorial misconduct and the prosecution's non-disclosure and intimidation of witness Joe Wilder were unreasonable applications of clearly established federal law. [R. 1].  As these claims were adjudicated on the merits during Fugate's direct appeal to the Kentucky Supreme Court, under the AEDPA, the Court must now determine whether these rulings were contrary to or an unreasonable application of clearly established federal law.

Because the court issued a summary opinion that did not discuss its reasoning, "we defer only to the result reached, not the reasoning used by the state court." Lovell v. Duffey, 629 F.3d 587, 595 (6th Cir. 2011); accord Harris v. Stovall, 212 F.3d 940, 943 n. 1 (6th Cir. 2000) (Where a state court decides an issue in summary fashion, "a habeas court should then focus on the result of the state court's decision."). We conduct a "careful and independent review of the record and applicable law," but this review is not a "full de novo review of the claims." Id.  Instead, the review "remains deferential because [we] cannot grant relief unless the state court's result is not in keeping with the strictures of AEDPA." Id.  The focus of this review is to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented. Howard v. Bouchard, 405 F.3d 459, 467 (6th Cir. 2005).

In this case, grounds III, IV, V, VI, and VII were raised in either Fugate's brief or his supplemental brief during his direct appeal. [Rs.16-21, 16-18 ].  Because the Kentucky Supreme Court issued an opinion without discussing its reasoning, these claims are considered rejected and review of these claims is limited to the result of these rejections. Ellison v.Commonwealth,

994 S.W.2d 939 (Ky. 1999) (The Kentucky Supreme Court has ruled that a claim brought on direct appeal is rejected even when the appellate court's opinion did not specifically address it.). Upon review, grounds III, IV, V, VI, and VII are not supported by the record[2].  Fugate was granted a belated appeal and he was afforded two separate opportunities to attempt to substantiate his above named claims. [R. 16-15 at 2].  Hearings were held on August 14, 1994, and September 20, 1994, for the sole purpose of determining the merit of Fugate's claims on appeal. Id.

### a.) Ground III- Witness Intimidation

Petitioner claims under ground III  that Joe Wilder, a witness, was intimidated by the prosecution. [R. 1]  This claim lacks evidentiary support.  During his both of his 1994 hearings, Fugate was afforded the opportunity to testify. [R. 16 at 19].  The record reflects that Fugate neither mentioned Joe Wilder during his own testimony, nor called him as a witness during either hearing. Id.  Furthermore, Petitioner has provided no evidence from Joe Wilder, such as an affidavit, to support this allegation.  Aside from this lack of evidence, the Petitioner also fails to show how the Kentucky Supreme Court's rejection of this claim was either contrary to or an unreasonable application of clearly established federal law.  Thus, no relief may be sought under ground III of his habeas petition.

---

[2] It is important to note that because Fugate filed a late appeal, the Supreme Court of Kentucky did not order the Commonwealth to file a response to Fugate's belated appeal until 1994. [R. 16-15 at 1].  By that time, the transcript of the actual trial had been destroyed and lead counsel, Hon. J. Douglas Graham, had died. Id. at 1-2.  Although there is no transcript of the actual trial, a CD of the state court record does still exist. Id.  In reviewing the state record, "the district court need not examine the trial records if two conditions are satisfied: 1) the state court opinions summarize the trial testimony or relevant facts; and 2) the petitioner does not quarrel with that summary and instead contends only that the trier of fact should have reached a different conclusion." Clark v. Waller, 490 F.3d 551, 556 (6th. Cir. 2007) (quoting Small v. Endicott, 998 F.2d 411, 414 (7th Cir. 1993).  Both conditions are satisfied in this case, as the petitioner has not contested the summarized facts and is only requesting a review of the findings made by the state courts.  Therefore, the surviving record, along with the two subsequent 1994 hearings granted after Fugate's trial, are sufficient for review.

*b.) Grounds IV, VI, VII- Prosecutorial Misconduct*

Under grounds IV, VI, VII, the Petitioner claims prosecutorial misconduct during opening and closing arguments, and throughout the trial. [R. 1 at 6-7]. Petitioner has failed to substantiate these claims as well. These claims were not pursued during the 1994 hearings and there is nothing in the record to suggest that the prosecutor acted improperly. Aside from this lack of evidence, Fugate's claims regarding the prosecutor's comments taken on their face would still not give rise to a constitutional violation.

Under ground IV of his petition, Fugate claims that his constitutional rights were violated when the prosecutor repeated to the jury that they should impose a life sentence during both his opening and closing arguments. [R. 1]. He also claims under ground VI that the prosecutor made comments[3] to "inflame the passions of the jury." Id. at 7. Under Kentucky law, the prosecution is permitted to inform all jurors of potential sentences to ensure all jurors can consider the full range of penalties for the charged crime. Mabe v. Commonwealth, 884 S.W.2d 668, 670 (Ky. 1994). Under federal law, the analysis is not whether the prosecution's comments were improper, but if those comments, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). A conviction is not lightly overturned on the basis of the prosecutor's closing arguments. United States v. Young, 470 U.S. 1 (1985).

---

[3] Fugate claims under ground VI that the prosecutor made the following remarks during his closing argument:

> You folks aren't from Perry County where this crime happened, but I'm calling on you to do the right thing and convict this man. This man is a cold blooded killer, we don't want this kind of crime going unpunished in Perry County and I know that you folks don't either. The people of Perry County couldn't try this case so its up to you folks to make such this man doesn't return to Perry County to commit another murder. I've done all that I can do in this case. I've brought you an eye witness, I wired Joanne Moore and followed her car and made this tape for you folks. She risked her life doing it and he but all confesses for you on the tape, he threatened Michael White's life, talked about cutting the boy's head off. I've done all I can do and it's up to you folks to convict him. This was a heinous crime, he is guilty and I'm asking you to convict him. [R. 1 at 7].

In this case, the transcript of the trial is unavailable and the Petitioner has not provided evidence to suggest that the prosecutor made the alleged comments during either his opening or closing argument. If Petitioner's claims are taken as true, under Kentucky law, the prosecution is afforded latitude to make mention of all possible sentences the defendant would be facing. Furthermore, under federal law, it is important to note that the district court's review of a claim of prosecutorial misconduct during opening and closing arguments is limited to the question of whether comments made by the prosecutor infected the fundamental fairness of the trial. Slagle v. Bagley, 457 F.3d 501, 515 (6th Cir. 2006). In order to satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant. Bates v. Bell, 402 F.3d 635, 641 (6th. Cir. 2004). Once conduct is held to be improper, there are four factors to consider in determining flagrancy: 1) the likelihood that the remarks tended to mislead the jury or prejudice the defendant; 2) whether the remarks were isolated or extensive; 3) whether the remarks were deliberately or accidentally made; and 4) the total strength of the evidence against the defendant. Id. at 641.

A claim for prosecutorial misconduct based on comments made during closing arguments was brought to the Sixth Circuit Court of Appeals in Broom v. Mitchell, 441 F.3d 392 (6th. Cir. 2006). In Broom, the prosecutor made statements during the guilt phase of the trial, that the defendant was a "serial killer," made a false statement that the victim was "vaginally and anally" raped, said the defendant "kills in the community and its going to go on and on and on," implied that the defendant would commit future rapes if he was released from prison and called the murder of the victim a "cold-blooded annihilation." Id. at 411-413. Though the Court found these comments to be improper, the Court held that the comments were not sufficiently flagrant as to warrant reversal because these comments were considered general attacks on the

defendant's overall mitigation case rather than pointed attacks at his witnesses or the defense attorney. Id. at 413. The Court further held that although the prosecutor implied that the defendant would commit future rapes if he was released from prison, these comments were not sufficiently flagrant because these comments did not qualify as appealing to the jury's fears and emotions. Id. The Court ultimately found that these improper statements did not "inject such vitriol into the proceedings, as to question the fairness of the entire sentencing hearing." Id.

In the present case, the Petitioner has failed to prove that the prosecution made improper comments during either his opening or closing argument. Further, taking Petitioner's claims at face value would still not give rise to a constitutional violation. In Broom, the prosecutor made similar comments such as characterizing the defendant as a serial killer, but went much further in both the frequency and severity of his comments. The Court still found that these comments were not frequent or flagrant enough to undermine the Court's confidence in the outcome of the trial. Id. at 413. Because Petitioner fails to show how the prosecution's comments, if actually made, rose to a level that would have compromised the overall fairness of his trial, the Kentucky Supreme Court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law. Therefore, no relief may be sought under this claim.

Petitioner also claims under ground VII that his constitutional rights were violated by the prosecutions misconduct throughout the trial. [R. 1]. Petitioner claims, in addition to the above mentioned misconduct, that the prosecution was also misleading, misstated facts, improperly vouched for evidence and intimidated the jury. Id. at 7. Similar to his argument above, the record does not substantiate Fugate's claims.

Under Kentucky law, "a prosecutor may comment on the tactics, may comment on the evidence, and may comment as to the falsity of a defense position." Slaughter v.

17

Commonwealth, 744 S.W.2d 407, 411-412 (Ky. 1987). The relevant question in analyzing a claim for prosecutorial misconduct on habeas review is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181; Johnson v. Bell, 525 F.3d 466, 482 (6th Cir. 2008). To satisfy this standard, the conduct must be both improper and flagrant. Broom, 441 F.3d at 412; see also Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir.1997) (noting that reversal is required if the prosecutor's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant") (internal citation omitted).

Petitioner has not presented evidence of any prosecutorial misconduct, intimidation of witnesses or made a showing that his trial was not overall fair. Petitioner was afforded opportunities in his 1994 hearings to substantiate his claims and failed to do so. Aside from this lack of evidence, Petitioner has failed to show how the Kentucky Supreme Court's decision to reject these claims are contrary to or an unreasonable application of federal law. As such, no relief may be under ground VII.

### c.) Ground V- Exculpatory Evidence

Petitioner claims under ground V of his habeas petition that he was denied due process of the law when the prosecution did not release Brady evidence before his trial. [R. 1 at 7]. Specifically, Petitioner claims that the prosecutor used statements made by witness David Crum, and that Defense counsel was neither made aware of Crum's potential testimony nor given his name as a witness before trial. Id. Because the Kentucky Supreme Court effectively rejected Fugate's Brady claim on the merits with a summary dismissal, the deferential AEDPA standard applies. See Hill v. Mitchell, 400 F.3d 308, 313 (6th Cir.2005).

Under Brady, "the suppression by the prosecution of evidence favorable to an accused upon

request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Johnson, 525 F.3d at 475.  To assert a successful Brady claim, a habeas petitioner must show that: (1) evidence favorable to the petitioner, (2) was suppressed by the government, and (3) the petitioner suffered prejudice. Banks v. Dretke, 540 U.S. 668, 691 (2004).  In this case, Fugate's claim that he was not provided discovery or given the proper opportunity to investigate and call David Crum as a witness is directly refuted by the existing record.  Though the trial transcript itself is unavailable, the record does indicate that Petitioner's counsel was provided with open file discovery. [Disc containing state Court record, TR I at 26].  The record also includes evidence that Petitioner subpoenaed David Crum for trial. [TR II at 226].  Because the record proves that the alleged testimony and existence of David Crum as a witness was not suppressed, no further inquiry is necessary.  In addition, Petitioner fails to show how the Kentucky Supreme Court's rejection of this claim was either contrary to or an unreasonable application of clearly established federal law.  Therefore, no relief may be awarded under this ground.

### 3) Ground VIII -Ineffective Assistance of Counsel.

In his petition for habeas relief, Fugate claims that he was denied effective assistance of counsel when his attorney failed to call witnesses, find and call David Crum, object to discovery violations, object to hearsay, preserve evidence and file a timely appeal . [R. 1 at 7-9].  As noted in the procedural history, the Kentucky Supreme Court summarily remanded Fugate's claim of ineffective assistance of counsel to the Powell Circuit Court for additional proceedings. [R. 16-4].  The sole issue on remand was whether Fugate was denied effective assistance of counsel under the new standard announced in Fraser and Norton, *supra*, which requires an RCr. 11.42 petitioner claiming ineffective assistance of counsel for failure to call witnesses at trial, to prove

that, "absent errors by trial counsel, there is a reasonable probability that the jury would have reached a different result." Norton, 63 S.W.3d at 177.

After reviewing the facts and evidence, the circuit court entered an order on March 27, 2012, applying the standards most recently set forth by the Kentucky state courts. [R. 16-4].   On remand, the circuit court found that "the failure to produce the witnesses in question would not have resulted in any reasonable probability that the jury in this case would have reached a result different than the one that they did." Id. at 14.   The court concluded that the previous findings of the Powell Circuit Court, "were adequate and proper and therefore affirmed its decision to overrule Fugate's RCr. 11.42 motion." Id. at 6-7.   Fugate then appealed that decision to the Kentucky Court of Appeals. Id.   The appellate court affirmed the lower court's ruling and the Supreme Court of Kentucky denied discretionary review on February 12, 2014. [Rs. 16-4, 16-3]. For purposes of this Section 2254 proceeding, the Court must analyze whether the Kentucky Court of Appeals reasonably applied clearly established federal law in denying Fugate's claim for ineffective assistance of counsel.

In its ruling affirming the denial of his RCr. 11.42 motion, the Kentucky Court of Appeals stated Fugate's claim for ineffective assistance of counsel as follows:

> As his first basis for appeal, Fugate argues that counsel was ineffective for failing to call eight exculpatory witnesses, including David Crum, to refute the Commonwealth's allegations.  Fugate asserts that his counsel had received reports from police interviews of several witnesses during the course of discovery, including Logan R. Sizemore, Mary Lee Collins, Maudie Standafer, Starla Fannin, Paula Price, Sherman Collet, David Lee Hughes, Tammy Rickett, and Lawrence Combs.  Fugate asserts that each of these witnesses had informed police that they had seen Collins on September 3, 1982, after the time of day in which White alleged that Fugate had killed him.
>
> Fugate further asserts that Sizemore told police that another individual named Tommy Logan had been the actual perpetrator, and that he had witnessed the shooting.  Fugate states that rather than call any of the aforementioned witnesses, counsel questioned Officer Caudill, the lead investigator on the case, as

to the existence of the witnesses.  According to Fugate, Caudill stated that there had been seven people who claimed to have seen Collins after the time of the alleged shooting and that the witnesses had no reason to lie. (Footnote omitted). Fugate asserts that although White's police interview indicates that Fugate had asked Crum to give them a ride to Fugate's house on September 3, 1982, Crum would have testified to the contrary.

Fugate also asserts that had Sizemore been called to testify, he would have testified that Logan killed Collins, and that other individuals would have testified as to the motive Logan had for doing so.  Specifically, Fugate asserts that Karen Sams informed police that Collins was involved in selling drugs, and that Starla Fannin would have provided similar testimony.  Fugate argues that Paula Price would have testified that she talked to Logan approximately one week after Collins had disappeared, and that Logan had informed her that Collins had been selling drugs for him and keeping the money.

While acknowledging that wide latitude is normally given to counsel in making tactical decisions, Fugate argues that in the matter sub judice, counsel had no strategic reason for failing to call these witnesses.  Fugate argues that absent an evidentiary hearing to determine what evidence was not presented by counsel, the trial court erred in assuming that counsel's actions were strategic.  Fugate asserts that there could not have been any reasonable trial strategy for failing to present the testimony of so many witnesses who could have provided what he argues would have been exculpatory testimony.  Fugate argues that had counsel called the aforementioned witnesses, there would have been more than a reasonable probability that the result of the trial would have been different.

[R. 16-4 at 8-11].

In analyzing the merits of the claim, the Kentucky Court of Appeals provided the following legal standard:

To establish an ineffective assistance of counsel claim under RCr 11.42, [Fugate] must satisfy a two-prong test showing both that counsel's performance was deficient, and that the deficiency caused actual prejudice resulting in a proceeding that was fundamentally unfair, and as a result, was unreliable. Strickland v. Washington, 466 U.S. 668 (1984).

As established in Bowling v. Commonwealth, 80 S.W.3d 405 (Ky. 2002):

The Strickland standard sets forth a two-prong test for ineffective assistance of counsel: First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland v. Washington, 466 U.S. 668, 687 (1984).  To show prejudice, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is the probability sufficient to undermine the confidence in the outcome. Id. at 694.

"[T]he proper standard for attorney performance is that of reasonably effective assistance." Id.  An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.  Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. Id. at 691-692 (citations omitted).

"It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693.  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  Additionally, "a hearing is required only if there is an issue of fact which cannot be determined on the face of the record." Stanford v. Commonwealth, 954 S.W.2d 742, 743-744 (Ky. 1993).

Bowling at 411-412.

Additionally, we note that the burden is on the movant to overcome a strong presumption that counsel's assistance was constitutionally sufficient or that under the circumstances, counsel's action "might not have been considered sound trial strategy." Strickland, 466 U.S. at 689.

[R. 16-4 at 7-8].

The court then reviewed Fugate's ineffective assistance of counsel claim based on counsel's alleged failure to call eight exculpatory witnesses, including David Crum. [R. 16-4 at 9]. The court reviewed the merits of this claim and found:

> Having reviewed the record, the arguments of the parties, and the applicable law, this Court is of the opinion that the standard set forth in <u>Robbins v. Commonwealth</u>, 719 S.W.2d 742, 743 (Ky. App. 1986), was correctly applied below in denying Fugate's initial RCr. 11.42 motion as, "merely failing to produce witnesses in the appellant's defense is not error in the absence of any allegation that their testimony would have compelled an acquittal." On remand, the court was instructed to apply the newer standards of review set forth in <u>Fraser</u> and <u>Norton</u>, *supra*, and in so doing, still found that the failure to produce the witnesses in question would have not resulted in a reasonable probability that the jury in this case would have reached a result different than the one that they did. <u>Norton</u> at 177.

> While Fugate claims that the witnesses he refers to would have allegedly testified to the fact that they saw Collins after the time that the murder allegedly occurred, or that the parties were not transported to the murder site in the way that White alleges, this Court is in agreement with the Commonwealth that such evidence alone would not have resulted in a reasonable probability of a different result, particularly in light of the other damning evidence submitted against Fugate, including an audiotape in which he describes his role in the crime in his own words. (Footnote omitted). While such testimony may have served to call into question the time of the killing or the exact date on which the killing occurred, in the opinion of this Court it would not overcome the other overwhelming evidence against Fugate, including the testimony of White and Moore, and Fugate's own audiotaped discussion of his role in the crime. Ultimately, the failure to call the witnesses Fugate asserts should have been called may or may not have shed light on the timeline of events, but would not alter in any way the evidence submitted as to how the murder occurred or by whom it was committed.

> Certainly, Fugate's allegations are subject to the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland v. Washington</u>, 466 U.S. at 689. This is particularly so in light of the fact that Fugate's trial counsel is now deceased, and cannot speak for himself as to his trial strategy and the reason he defended the case in the manner that he did. <u>McKinney v. Commonwealth</u>, 445 S.W.2d 874 (Ky. 1969).

[R. 16-4 at 13-15].

This analysis represents a reasonable application of federal law on ineffective assistance of counsel claims.  Just as summarized by the Kentucky Court of Appeals in this case, the Supreme Court of the United States presently holds that in order for a defendant to have his or her conviction overturned based upon ineffective assistance of counsel, two elements must be satisfied: (1) the defendant must show that counsel's performance was so defective that he/she was not functioning as counsel as guaranteed under the Sixth Amendment; and (2) the defendant must show that prejudice resulted from the defective performance. Strickland v. Washington, 466 U.S. 668, 688 (1984).  Under the Strickland analysis, the performance inquiry focuses on whether counsel's assistance was reasonable considering the totality of the circumstances. Id. at 688.  The prejudice inquiry focuses on whether the defendant is able to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Id. at 694.  Thus an error by counsel, even if professionally unreasonable, does not warrant setting aside the conviction if the error did not affect the outcome. Id. at 691.

Significantly, both prongs of the Strickland test must be met for a finding of ineffective assistance, but courts are not required to conduct an analysis under both; thus, a court need not address the question of competence if it is easier to dispose of the claim due to the lack of prejudice. Strickland, 466 U.S. at 697; Baze v. Parker, 371 F.3d 310, 321 (6th Cir. 2004).  In addition, the reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.  "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" Pough v. United States, 442 F.3d 959, 966 (6th Cir. 2006) (citing Whiting v Burt, 395 F.3d 602, 617 (6th Cir. 2005)).  Under AEDPA, a state court's ruling on an ineffective assistance of counsel claim presented below must be an unreasonable

24

application of the Strickland standard in order to justify federal habeas relief. Bell v. Cone, 535 U.S. 685, 693-94 (2002); Scott v. Elo, 302 F.3d 598, 606-07 (6th Cir. 2002); Mongo v. Edwards, 281 F.3d 568, 582-83 (6th Cir. 2002).

Here, the Kentucky appellate court correctly applied the Strickland test, reasoning that Fugate had not met his burden of proving that counsel's failure to call additional witnesses had prejudiced the result of the trial.  The court then supported its reasoning by reviewing the evidence that existed against Fugate at the time of trial, including White and Moore's testimony and Fugate's own audio taped discussion of his role of the crime. [R. 16-4 at 14].  The appellate court also noted that even if Fugate's alleged witnesses were called, they could have only helped to determine the time line of events, and would not have altered the evidence submitted as to how Collins was murdered or by who. Id.  Based on this reasoning, a thorough review of the record below, the record procured during the two 1994 hearings, and the applicable law, this Court finds that the Kentucky appellate court's decision that Fugate's counsel did not provide ineffective assistance of counsel was a reasonable application of the Strickland analysis. Accordingly, this claim does not provide a basis for granting Fugate habeas relief.

### 4) Ground IX- Denial of Record and Cumulative Error

Finally, Petitioner claims that he was denied a complete record of the proceedings in the lower court, an evidentiary hearing, and other various errors during trial.  [R. 1 at 8].  Though Petitioner's argument is confusing and lacks support, to the extent that a *pro se* document is "to be liberally construed," and "a *pro se* complaint... must be held to less stringent standards than formal pleadings drafted by lawyers," the Court will construe this argument as a claim of deprivation of due process based on cumulative errors at trial. Erickson v. Pardus, 551 U.S. 89, 94 (2007).  The law of this Circuit is that cumulative error claims are not cognizable on habeas

because the Supreme Court has not spoken on this issue. <u>See</u> <u>Moore v. Parker</u>, 425 F.3d 250, 256 (6th Cir.2005); <u>Williams v. Anderson</u>, 460 F.3d 789, 816 (6th Cir. 2006). Accordingly, no relief may be sought under this claim.

<u>E. CONCLUSION</u>

This Court does not find that the state courts' rulings represent an unreasonable application of clearly established federal law. The Kentucky courts reasonably applied the correct federal equivalents to all of Fugate's claims, and found no grounds for relief. This Court agrees with the Kentucky courts' findings and Fugate has been unable to meet his burdens of proving otherwise. For the reasons set forth above, the undersigned recommends that Fugate's Petition for Writ of Habeas Corpus [Record No. 1] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. <u>United States v. Campbell</u>, 261 F.3d 628, 632 (6th Cir. 2001); <u>Thomas v. Ann</u>, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004); <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995).

Signed March 16, 2015.



Signed By:
**_Edward B. Atkins_**
**United States Magistrate Judge**